# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMANDA JO HOLMES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-425-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Amanda Jo Holmes requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was thirty-five years old at the time of the administrative hearing (Tr. 269). She has a high school education and has worked as a retail sales clerk, stock clerk, cashier II, short order cook, and sales clerk (Tr. 171, 297). The claimant alleges that she has been unable to work since June 16, 2015, due to bipolar disorder, posttraumatic stress disorder ("PTSD"), borderline personality disorder, agoraphobia, and dissociative identity disorder (Tr. 296).

## Procedural History

On June 18, 2015, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Dierdre O. Dexter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 22, 2016 (Tr. 107-120). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), with the following nonexertional limitations: (i) simple, routine, and repetitive tasks not at production rate; (ii) occasional interaction with supervisors to receive work instructions; (iii) no more than occasional, direct, work-related

interaction with co-workers; (iv) no interaction with the general public; and (v) no more than ordinary and routine changes in work setting or work duties (Tr. 112). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *e. g.*, industrial sweeper, floor waxer, and hand packager (Tr. 118-20).

**Review**

The claimant's sole contention of error is that the ALJ erred in evaluating the opinion of treating physician Dr. Michael Collins. The Court finds this contention unpersuasive for the following reasons.

The ALJ found that the claimant had the severe impairments of degenerative disc disease, affective disorder, anxiety related disorder, personality disorder, and substance addiction disorder, but that her asthma, restless leg syndrome, and fibromyalgia were nonsevere (Tr. 109). The relevant medical record reveals that Dr. Carol Gambrill treated the claimant for anxiety from January 2013 through August 2014 and for bipolar disorder in May 2014 and August 2014 (Tr. 380-99). Thereafter, the claimant's primary care physician, Dr. Douglas Brown, treated her for, *inter alia*, unspecified bipolar disorder, generalized anxiety disorder, insomnia due to mental disorder, agoraphobia with panic disorder, and chronic PTSD from October 2014 through June 2016 (Tr. 446-519, 556-606). At a follow-up appointment on August 12, 2015, Dr. Brown noted the claimant's bipolar disorder and agoraphobia were stable and controlled on medication, and that her PTSD was stable (Tr. 514). Dr. Brown's mental status examinations were consistently normal, however, he noted the claimant was anxious in October 2014, November 2014, and March

2015; and that she was anxious and depressed in September 2015 and January 2016 (Tr. 454, 466, 470, 508, 579).

State reviewing psychologist Laura Eckert, Ph.D. reviewed the claimant's records on August 5, 2015 (Tr. 181-83). She indicated that the claimant had moderate limitations in all three areas of functioning, and that she had no episodes of decompensation (Tr. 182). On the Mental RFC Assessment, Dr. Eckert opined that the claimant was moderately limited in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the work setting; and was markedly limited in her ability to interact appropriately with the general public (Tr. 186-87). Dr. Eckert concluded that the claimant could perform simple and some complex tasks with routine supervision; could relate and interact with supervisors and coworkers on a superficial work basis, but contact should be limited; could not relate to the general public; and was slow to adapt to changes in routine and work situations (Tr. 187). Her assessment was affirmed on review (Tr. 195-201).

On March 22, 2016, the claimant established care with Dr. Collins (Tr. 546-51). Dr. Collins noted the claimant had a dysthymic mood and an unhappy affect, and assessed her with mood disorders not otherwise specified, personality disorder, and anxiety disorder not

otherwise specified (Tr. 546-50). At a follow-up appointment on April 19, 2016, the claimant reported that she stopped taking the medications Dr. Collins previously prescribed, would continue treatment solely with Dr. Brown in the future, and requested an evaluation for disability (Tr. 552). The same day, Dr. Collins completed a Mental RFC Questionnaire wherein he stated that the claimant was unable to meet competitive standards in all of the mental abilities and aptitudes he evaluated except for her ability to be aware of normal work hazards and take appropriate cautions, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness, which he found the claimant was seriously limited, but not precluded from performing (Tr. 542-43). Dr. Collins also opined that the claimant would be absent from work more than four days per month (Tr. 544). He concluded that the claimant was unable to work due to her mood and personality symptoms (Tr. 544).

As to her mental impairments, the claimant testified at the administrative hearing that she was unable to work because she has a very hard time dealing with the public and is anxious, irate, and paranoid around unfamiliar people (Tr. 161). She stated that she also experiences mood swings, is unsure what her mood will be at any given time, and that her memory is "foggy." (Tr. 161-62). She testified that any type of adversity in the workplace "sets [her] off." (Tr. 165).

The claimant argues that the ALJ erred in assessing the April 2016 opinion of treating physician Dr. Collins. Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the

record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight he gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 [quotation omitted].

   In her written opinion, the ALJ thoroughly summarized the claimant's hearing testimony and the medical record. She assigned little weight to Dr. Collins' opinion

because: (i) he had only two appointments with the claimant, one of which was for a disability assessment; (ii) his opinion was inconsistent with his own treatment notes, which reflect the claimant was noncompliant with treatment, and that she had no manic symptoms, disorientation, or memory impairment; (iii) his opinion was inconsistent with Dr. Brown's treatment notes covering a much longer treatment period and indicated that the claimant's bipolar disorder was in remission as of December 2015; (iv) he opined on an issue reserved to the Commissioner; (v) he assessed a Global Assessment of Functioning ("GAF") score of forty-five, but provided no basis for such finding; and (vi) his opinion was not completed on an SSA approved form (Tr. 116). The ALJ then gave great weight to the state agency psychologists' opinions because Dr. Brown's treatment notes indicated moderate limitations in the claimant's activities of daily living, social functioning, and ability to maintain concentration, persistence, and pace (Tr. 118). Accordingly, the ALJ specifically addressed Dr. Collins's findings, and the Court finds that she adequately discussed and analyzed each of the opinions contained in the record. Her findings indicate that she considered each opinion in turn and gave reasons for adopting or not adopting the limitations described in them. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted]. Accordingly, she did not commit error in failing to include further limitations for the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 6th day of March, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**